UNITED STATES:

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT COURT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| v. | ) Case No: **0090 1:23CR00449-001** |
| | ) |
| TONY GILL | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM IN AID OF SENTENCING

Comes Now, **TONY GILL**, by counsel, and respectfully files the below *Memorandum in Aid of Sentencing* for consideration, along with argument to be presented, at his sentencing hearing on July 10, 2024, at 10 a.m. Mr. Gill respectfully respects a sentence of probation with appropriate conditions.

## PRE-SENTENCE REPORT AND SENTENCING GUIDELINES

Mr. Gill agrees with the facts contained in the pre-sentence report and agrees with the probation office's calculation of the sentencing guidelines. In particular, Ms. Reichler correctly applied United States Sentencing Guidelines Provision 4C1.1. The government's objection to the application of 4C1.1 does not address any one of the ten criteria listed in the guideline and does not appear to contest that Mr. Gill's history, characteristics, count of conviction, or conduct meet such criteria. Because Mr. Gill fits all of the criteria, the guideline applies. While Mr. Gill disagrees with the government that general equities are relevant to the application of 4C1.1, such equities would support leniency for Mr. Gill. Mr. Gill's conduct  differentiates him from many January 6, 2021 defendants in that he (1) did not plan in advance to

attend the rally at the Capitol at all, rather, he decided to park and approach the rally after hearing about it when he was leaving a nearby work-site; (2) he approached the Capitol alone, with no agenda or plan; and (3) he had no meaningful interactions with anyone engaging in violent or destructive conduct. In fact, Mr. Gill entered the Capitol to take a "selfie", remained for a short time while taking video (which he never deleted), and took part in no riotous behavior while inside. While inside, he remained in one small room. He deeply regrets his decision to enter the Capitol, and readily pled guilty to exactly what he did. The question of application of 4C1.1 to January 6, 2021, prosecutions has been addressed in this Circuit, and just like with other defendants who did not engage in violence or threats of violence on January 6, the individual circumstances of Mr. Gill's offense entitle him to this reduction. *See United States v. Yang*, CRIMINAL ACTION 23-100 (JDB), at *9 (D.D.C. Feb. 9, 2024)(The Court thus rejects the government's violence-by-presence theory of § 4C1.1(a)(3).) *See also United States v. Hernandez*, Crim. A. No. 21-445 (CKK), ECF No. 65, at 6-8 (D.D.C. Jan. 31, 2024); *United States v. Bauer*, Crim. A. No. 21-3862-2 (TNM), 2024 WL 324234, at *4 (D.D.C. Jan. 29, 2024); *United States v. Isaacs*, Crim. A. No. 22-338 (DLF) (D.D.C. Jan. 12, 2024) (oral ruling); *United States v. Parks*, Crim. A. No. 21-411-1 (APM) (D.D.C. Nov. 15, 2023) (oral ruling); *United States v. Eicher*, Crim. A. No. 22-38 (BAH), ECF No. 103, at 45-47 (Sept. 15, 2023) (oral ruling); *see also United States v. Weyer*, Crim. A. No. 22-40 (JEB) (D.D.C. Sept. 14, 2023) (oral ruling) (concluding that § 4C1.1 reduction would "likely" apply).

## **NATURE AND CIRCUMSTANCES OF THE OFFENSE**

Mr. Gill agrees that the incursion into the U.S. Capitol was a serious offense and that every person who entered the Capitol contributed to its gravity. He is ashamed of his conduct. His impulsive behavior came from a truly held support for then-President Trump, but he does not believe that provides

him any excuse for it. His decision to enter the Capitol has caused him deep regret and embarrassment, and substantially harmed his family and career.

It is also apparent that Mr. Gill is in the least culpable category of defendants who entered the Capitol on January 6, 2021. In an effort to cast as much negativity on Mr. Gill that the facts can bear, the government asks this court to attribute the malicious intent of others to him based on his presence nearby certain events.

In its' sentencing memorandum and in its' *Response to Draft Pre-Sentence Report*, the government states that Mr. Gill "cheered some of the most violent assaults that occurred at the Capitol on January 6, 2021." Mr. Gill's "cheering violent assaults" does not appear in the Statement of Facts. The government's sentencing exhibit video depicts Mr. Gill cheering in various directions near the Capitol while rioters he does not know are combatting police. However, the silent video does not depict that chanting that was occurring. Mr. Gill does not agree that he was expressing enthusiasm for people assaulting anyone. As the video also depicts, people are looking in all directions and not necessarily focused on the fighting happening in the center of the video. The argument *that Mr. Gill's presence in the crowd (and everyone else's presence in the crowd) had the general effect of encouraging the entire shameful and dangerous melee* is true. But Mr. Gill, whose son is a police officer, never intended to encouraged violence against police or anyone else on January 6. Mr. Gill is a non-violent man who proudly served in the Marine Corp, owns no firearms, belongs to no groups associated with violence or radical conduct, and devotes almost all of his waking hours to supporting an extended family. The Statement of Facts in this case, with which Mr. Gill does agree, correctly explains that he stood in the vicinity *of people he did not know and never spoke to* while they engaged in certain conduct.

The government states twice in its' sentencing memorandum that Mr. Gill "researched" the January

6 events before coming to the Capitol on January 6. This statement may come from the Statement of Facts' sentence which says "....Gill observed traffic near Capitol Street and conducted a google search to see what was occurring at the Capitol. Thereafter, he learned of the ongoing riot." While the google search may be the "research" to which the government refers, it hardly amounts to evidence of premeditation or planning. When Mr. Gill arrived at the Capitol, he saw that Trump supporters were riotously entering the Capitol. At that time, Mr. Gill committed a crime by entering the Capitol himself. He is ashamed of doing so. He has never denied his conduct.[1] Unlike the defendants referenced in the government's sentencing memorandum's "disparity" section, Mr. Gill took no steps to conceal his behavior.

Finally, the government's argument that Mr. Gill's impulsive decision to go to the Capitol on January 6 *makes him more culpable* than defendants who travelled in groups to D.C. with a plan to attend the "'Stop the Steal" rally strains credulity and goes directly against arguments made by the government in many other cases. The unplanned and solo nature of Mr. Gill's participation in the events of January 6 is mitigating, if the distinction matters at all.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Gill began a lifetime of hard work at a grocery store, where he was promoted to manager while still in high school (the youngest manager in a seventy-five-store chain). Two years after high school, in 1990, he joined the Marine Corp where he served honorably until 1995.

He married Tammy Gill in 1991. They have three adult children, one who works as an EMT, one as a veterinary technician, and one who is a former U.S. Marine and current police officer in Winchester,

---

[1] Like with many January 6 defendants, Mr. Gill's plea agreement required him to debrief with the government upon request. Not only was he willing to do so, but he wanted to do so and specifically asked counsel try to ensure that the debriefing occurred. Counsel made that request to the government.

Virginia. He and his wife have four grandchildren. He worked for Crothall Health Care for twenty-one years, where, as of January 6, 2021, he oversaw accounts in Northern Virginia, DC, and Maryland for a total of 48 hospitals and 187 ambulatory centers. Because of his involvement in the events of January 6, he was demoted to financial analyst. His salary was cut by more than half. For extra money for his family, Mr. Gill also runs a junk removal company.

Mr. Gill is a man of exemplary character, as evidenced by eight selected letters of support. (See Attachment C). Notably, his current life centers not only around his hard work and devotion to family, but his recent, additional support, in his home, of his mother-in-law and his wife's stepmother. (See letter of Josh Breeden). See also Attachment D (Resume of Tony Gill).

## THE NEED TO REFLECT SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW AND PROVIDE JUST PUNISHMENT OF THE OFFENSE, AND THE NEED FOR THE SENTENCE TO AFFORD ADEQUATE DETERRENCE

Given the circumstances described above, a sentence of probation is sufficient but not greater than necessary to accomplish these goals. Mr. Gill has suffered substantial consequences for his poor decision on January 6, 2024. He is not a person whose involvement on January 6 serves as a badge of honor or a source of pride among family, friends, or in professional life. Indeed, the potential reputational impact of what he did on January 6 caused his company to demote him out of a fear that his clients would abandon the company if he were its spokesman. At the sentencing of this matter, counsel will present evidence from Mr. Gill's wife, through testimony or proffer, on her and the Gill family's' view of his fateful decision to turn towards the Capitol after leaving his work site on January 6.

## THE NEED TO AVOID UNWARRANTED DISPARITIES

Because there have been so many prosecutions concerning the January 6 riot, assessing this

factor from 18 U.S.C. 3553 (a) can feel like an exercise in cherry-picking facts from other cases to make them seem similar or dissimilar to the case at hand. Because every case and every person is so different, the government correctly notes, in assessing this factor, that "Different district courts can and will sentence differently – differently from the sentencing guideline range, differently from the sentence an appellate court may have imposed, and differently from how other districts night have sentenced that defendant." *Government Sentencing Memorandum* at 21 (citing *United States v. Gardellini*, 545 F. 3d 1089 (D.C. Cir 2008).

Well over a hundred January 6 defendants, including some convicted of felonies, have received probationary (or supervised release) sentences.[2]   *See Morgan-Lloyd, Anna* 1:21-CR-00164-RCL; *Ehrke, Valerie* 1:21-CR-00097-PLF; *Hiles, Jacob* 1:21-CR-00155-ABJ; *Wangler, Douglas* 1:21-CR-00365-DLF; *Harrison, Bruce* 1:21-CR-00365-DLF; *Sizer, Brian* 1:22-CR-00376-JEB; *Bonenberger, Jordan* 1:22-CR-00102-JDB; *Watts, Nathan* 1:23-CR-00089-ABJ; *Moncada, Nicolas* 1:22-CR-00366-CRC; *Doyle, Danielle* 1:21-CR-00324-TNM; *Rosa, Eliel* 1:21-CR-00068-TNM; *Gallagher, Thomas* 1:21-CR-00041-CJN; *Vinson, Thomas* 1:21-CR-00355-RBW; *Dillon, Brittiany* 1:21-CR-00360-DLF; *Sanders, Jonathan* 1:21-CR-00384-CJN; *Cordon, Sean* 1:21-CR-00269-TNM; *Wilkerson, John IV* 1:21-CR-00302-CRC; *Wrigley, Andrew* 1:21-CR-00042-ABJ; *Parks, Jennifer* 1:21-CR-00363-CJN; *Hatley, Andrew* 1:21-CR-00098-TFH; *Pert, Rachael* 1:21-CR-00139-TNM; *Schwemmer, Esther* 1:21-CR-00364-DLF; *Sizer, Julia* 1:21-CR-00621-CRC; *Witcher, Jeffrey* 1:21-CR-00235-RC; *McAlanis, Edward* 1:21-CR-00516-DLF; *Schubert, Amy* 1:21-CR-00588-ABJ; *Schubert, John* 1:21-CR-00587-ABJ; *Quick, Michael* 1:21-CR-00201-DLF; *Quick, Stephen* 1:21-CR-00201-DLF; *Lewis, Jacob* 1:21-CR-00100-CRC; *Genco, Raechel* 1:22-CR-00062-JMC; *Macrae, Douglas Farquha*

---

[2] Mr. Gill does not suggest that he deserves a probationary sentence because many others have received such. He asks for it based on the facts and circumstances of his case.

1:22-CR-00181-JEB; *Seymour, Paul SR.* 1:22-CR-00041-APM; *Seymour, Paul Jr.* 1:22-CR-00041-APM; *Ferguson, Jamie* 1:22-CR-00194-APM; *Fontanez- Rodriguez, Samuel* 1:22-CR-00256-EGS; *Saer, Lilith* 1:22-CR-00374-DLF; *Cantrell, Eric* 1:22-CR-00121-TNM; *Culbertson, Alan Scott* 1:23-CR-00065-ABJ; *Ramakrishn, Karthik* 1:23-CR-00247-JMC; *Connolly, Kim Marie* 1:23-CR-00031-JMC; *Vinson, Lori* 1:21-CR-00355-RBW; *Nelson, Brandon* 1:21-CR-00344-JDB; *Markofski, Abram* 1:21-CR-00344-JDB; *Prado, Nicole* 1:21-CR-00403-RC; *Williams, Troy* 1:21-CR-00082-CJN; *Williams, Andrew* 1:21-CR-00045-DLF; *Schornak, Robert* 1:21-CR-00278-BAH; *Gonzalez, Eduardo* 1:21-CR-00115-CRC; *Nalley, Verden* 1:21-CR-00016-DLF; *Kelley, Kari* 1:21-CR-00201-DLF; *Martin, Zachary* 1:21-CR-00201-DLF; *Cudd, Jenny* 1:21-CR-00068-TNM; *Jackson, Micajah* 1:21-CR-00484-RDM; *Lavin, Jean* 1:21-CR-00596-BAH; *Krzywicki, Carla* 1:21-CR-00596-BAH; *Kulas, Christian* 1:21-CR-00397-TFH; *Ballesteros, Robert* 1:21-CR-00580-DLF; *Spain, Jr., Edward* 1:21-CR-00651-DLF; *Ortiz, Christopher* 1:22-CR-00082-JMC; *Bratjan, Frank* 1:22-CR-00285-TNM; *Connor, Francis* 1:21-CR-00586-RC; *Ferrigno, Antonio* 1:21-CR-00586-RC; *Lunyk, Anton* 1:21-CR-00586-RC; *Ayres, Stephen* 1:21-CR-00156-JDB; *Rader, Kenneth* 1:22-CR-00057-RCL; *Hentschel, Cara* 1:21-CR-00667-FYP; *Munn, Joshua* 1:21-CR-00474-BAH; *Munn, Kayli* 1:21-CR-00474 – BAH; *Munn, Thomas* 1:21-CR-00474-BAH; *Munger, Jeffrey* 1:22-CR-00123-RDM; *Rodean, Nicholas* 1:21-CR-00057-TNM; *Clark, Christy* 1:21-CR-00218-APM; *Clark, Matthew* 1:21-CR-00218-APM; *Spigelmyer, Paul* 1:21-CR-00218-APM; *Brooks, James* 1:22-CR-00018-JMC; *Horvath, Jennifer* 1:22-CR-00192-BAH; *Yazdani-Isfehani, Abigail* 1:21-CR-00543-CRC; *Yazdani-Isfehani, Loruhamah* 1:21-CR-00543-CRC; *Evans III, Treniss* 1:21-CR-00225-DLF; *Castle, Trudy* 1:22-CR-00261-CRC; *DiFrancesco, Kimberly* 1:22-CR-00261-CRC; *Presley, Ronnie* 1:21-CR-257-RDM; *Frankowski, Dawn* 1:21-CR-00592-ABJ; *Buxton, Jonas* 1:21-CR-00739-JDB; *Gross, Juliano* 1:22-CR-00056-APM; *Council, Matthew* 1:21-CR-00207-TNM; *Witzemann, Shawn* 1:21-CR-00314-TFH; *Hand, Charles III* 1:22-CR-111-JEB; *Herrera,*

*Erik* 1:21-CR-619-BAH; *Montalvo, Matthew* 1:22-CR-00146-RDM; *Gable, Levi* 1:22-CR-00189-JMC; *Faulkner, Luke* 1:21-CR-00725-RDM; *Bustos, Alexis* 1:22-CR-00016-CJN; *Bustos, Bryan* 1:22-CR-00016-CJN; *Myers, Rachel* 1:22-CR-00074-JMC; *Cramer, Country* 1:22-CR-00339-RDM; *Ambrose, Lawrence* 1:22-CR-00302-DLF; *Weibling, Adam* 1:21-CR-00644-RDM; *Cronin, Kevin* 1:22-CR-00233-ABJ; *Riley, Michael* 1:21-CR-00628-ABJ; *Gould, John David* 1:22-CR-00311-RD; *Horvath, Ian* 1:22-CR-00344-DLF; *Gerding, Jason* 1:21-CR-00131-DLF; *Cohen, Menachem* 1:22-CR-00393-DLF; *Temple, Cole Andrew* 1:22-CR-00243-CKK; *Rheiner, Narayana* 1:22-CR-00108-DLF; *Isaacs, William* 1:21-CR-00028-APM; *Parker, Bennie* 1:21-CR-00028-APM; *Hellonen, Dodge* 1:23-CR-00140-ACR; *Llamas, Saul* 1:23-CR-00020-TNM; *Abate, Joshua* 1:23-CR-00144-ACR; *Preller, Brian* 1:23-CR-00045-TMN; *Yavoich, Andrew* 1:23-CR-00216-ACR; *Krauss, David* 1:23-CR-00034-JEB; *Krauss, Nicholas* 1:23-CR-00034-JEB; *Cotton, William* 1:23-CR-00002-JEB; *Chang, Julio C* 1:21-CR-00703-RDM; *Lesperance, David* 1:21-CR-00575-JDB; *Hall, Joshua* 1:23-CR-00246-JMC; *Mooney-Rondon, Maryann* 1:21-CR-00722-JMC; *Rondon, Rafael* 1:21-CR-00722-JMC; *Keller, Klete* 1:21-CR-00104-RJL; *Bartow, Travis* 1:22-CR-00358-RC; *Andrulonis, Ronald* 1:23-CR-00085-BAH; *Christensen, Holly* 1:23-CR-00203-DLF; *Christensen, Scott* 1:23-CR-00203-DLF; *Ball, David* 1:23-CR-00153-JDB; *Epps, James Ray* 1:23-CR-00321-JEB; *Horn, Stephen* 1:21-CR-00301-TJK; *Christensen, Reed Knox* 1:21-CR-00455-RCL; *Matson, Israel Mark* 1:23-CR-00349-TJK.

Here, the government cites six specific cases to suggest that it would be unfair for Mr. Gill to receive a probationary sentence. This effort illustrates the difficulty of such an endeavor. None of cited cases support the idea that a probationary sentence for Mr. Gill would create an unfair disparity. (None of the facts below were mentioned in the government's disparity argument in this case. They were all taken from the government's sentencing memorandum for the defendant at issue):

**Jeffrey Finley** - This defendant *was the president of a West Virginia chapter of the Proud Boys* and came to DC as part of the organized Proud Boys contingent, planning to commit

violence if necessary.

**Dennis Adams** – This defendant lied to agents in a formal interview about being invited into the Capitol by police (and later admitted the same). He also has a criminal record consisting of at least ten charges.  The government stated in its memorandum that "While Adams' arrests and convictions are all older, the sheer number of arrests are troubling and indicative of some likelihood of recidivism."

**Michael Dillon** – This defendant lied under oath during the case by saying he only entered the Capitol to protect police, violated his plea agreement by declining to name accomplices, falsely told agents he never carried a flag, and, through counsel, deliberately tried to frustrate the purpose of a debriefing. The government argued that even at the time of sentencing he lacked any respect for the law.

**Elliot Bishai** - Before entering the Capitol, this defendant, who had travelled with a group to DC, filmed himself encouraging other rioters to "keep pushing" as they were ascending the Northwest stairs, yelled "go, come on, you got it" to rioters as they were scaling a wall of the building, and shouted, "let's go, civil war 2". He carried a weapon - a large metal pole – while inside the Capitol. His phone contained over 80 images that reflect Nazi and white supremacist ideologies and 400 videos made by a well-known white supremacist commentator.

**Elias Irizarry**  - This defendant also carried a large metal pole in the Capitol and obstructed justice by deleting evidence from his phone. After he was arrested, according to the government, he:

*….did not show remorse but rather was determined to figure out who "backstabbed" him by "turning him in" to authorities. Irizarry discussed via text message how the FBI found out that he went inside the Capitol and who turned him in. Between late January and early March 2021, Irizarry also exchanged text messages with co-defendant Bishai about joining the Russian Military if they were not permitted to remain in the U.S. Military due to the "FBI Stuff." After January 6, Irizarry and Bishai also participated in a group chat titled "Civil War" and discussed using small planes to cross borders undetected. Irizarry's concerns after January 6, which ring a far cry from remorse, highlight the need for specific deterrence. Irizarry ECF* 111.

**Michael McCormick** – This defendant admitted he deleted pictures and videos that he took on January 6, 2021, from his phone after being contacted by the FBI.

## CONCLUSION

Mr. Gill respectfully requests a sentence of probation with appropriate conditions. (Pursuant to U.S.S.G 5b1.1, a sentence of home confinement is authorized). As noted in the PSR, several factors may

warrant a variance below the applicable guideline, including Mr. Gill's financial obligations to his family[3] and his positive progress since his conduct in the instant offense.[4] The same factors suggest that a low-end sentence is appropriate.

Respectfully submitted,

By Counsel
/s/

Christopher Leibig, Esq.
Virginia Bar No. 40594
Counsel for Defendant
421 King Street  #505
Alexandria, Virginia 22314
(703) 683 4310
chris@chrisleibiglaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of July 2024, I will electronically file the foregoing Notice with the Clerk of Court using the CM/ECF system, which will then send a notification of said filing (NEF) to counsel of record.

/s/
Christopher Leibig

---

[3] The PSR notes in the final section that Mr. Gill supports his "dependent wife and infant daughter". In fact, he supports, aside from his immediate family, his mother-in-law and his disabled wife's stepmother. Counsel should have previously noted this clerical error. In any event, the Gill's need all the money Tony can earn given their support for these older relatives in their home and Tonys demotion at work.

[4] Mr. Gill's attitude and behavior after January 6 distinguishes him in a positive way from every defendant referenced in the government's disparity argument.